# ATTACHMENT B

# AFFIDAVIT OF TASK FORCE OFFICER JASON R. CARTER

# UNITED STATES DRUG ENFORCEMENT ADMINSTRATION

I, Jason R. Carter, being first duly sworn, do hereby depose and state the following:

1. I, Jason R. Carter, am a Narcotics Detective with the Springfield, Missouri, Police Department (SPD) assigned as a Task Force Officer (TFO) with the U.S. Drug Enforcement Administration (DEA) Springfield, Missouri, Resident Office (SRO). My primary duty and assignment is to enforce the drug laws of the United States of America. I have been a sworn law enforcement officer for over eight years. For the past three years, I have been assigned as a TFO with DEA's SRO. I have received specialized training relating to the manufacture of controlled substances, the distribution of controlled substances, and possession with intent to distribute controlled substances. From my training and experience, I have extensive knowledge of complex illegal drug manufacturing and distribution operations.

2. Based upon the information provided below, I believe that there is a probable cause basis to find that JASON A. HAMANN (HAMANN) committed the following criminal act in violation of federal law: (1) possession, with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A); and (2) possession, with the intent to distribute, a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

3. The information contained in this affidavit is based upon my own investigation, oral and written reports by other law enforcement officers, and other investigative techniques. The dates and times in this affidavit are approximate. Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause for this criminal complaint, I have not described all of the relevant facts and circumstances of which I am aware.

4. On December 8, 2018, at approximately 4:00 p.m., Missouri State Highway Patrol (MSHP) Trooper Jason Millsap executed a state search warrant at a salvage yard, located at 20448 Eastgate Road, Lebanon, Laclede County, Missouri. HAMANN was present during the service of the warrant, and he was detained by troopers.

5. During the search of the property, troopers located a truck that was registered to HAMANN. Inside the truck, troopers located a backpack on the front-passenger seat of the truck. That backpack contained 11 baggies containing a substance consistent with methamphetamine and

a SCCY brand 9mm firearm (S/N: 533651). Lastly, there was a check made out to "Jason Hamanam" in the amount of $200.00 in the backpack.

6. In a Craftsman brand tool bag found in the floorboard of the truck, troopers located five more firearms and a zippered bag containing $11,280 in United States currency.

7. In the bed of the same truck, troopers located a plastic tote that contained three vacuum sealed bags. Each bag contained a bundle of a white, crystalline substance consistent with methamphetamine wrapped in green cellophane and a yellow substance that smelled of mustard. There were also two Ziploc-style bags that contained a white, crystalline substance consistent with methamphetamine. Trooper Millsap seized all five bags and their contents. A field test of the contents of one of the bags showed a positive result for the presence of methamphetamine. Trooper Millsap weighed the methamphetamine seized from Hamann and found the total weight to be approximately five pounds.

8. HAMANN was arrested by Trooper Millsap, and was booked into the Laclede County, Missouri, Jail. On December 9, 2018, I responded to the jail to conduct an interview of HAMANN. Trooper Millsap and I met with HAMANN in an interview room, and I advised HAMANN of his rights per *Miranda*. HAMANN stated he understood his rights, and agreed to speak to officers without a lawyer present.

9. I advised HAMANN he had been the subject of a narcotics investigation for several months, and that I was familiar with HAMANN and his associates. I asked HAMANN about the narcotics seized from the truck on the property. HAMANN initially stated he did not know anything about the truck. When I told HAMANN the truck was registered in his name, HAMANN admitted he owned it. HAMANN stated the truck had been on the property for approximately one month, and he did not know who had been coming and going from the property or who had access to the truck. HAMANN stated he did not know anything about the narcotics in the truck, and speculated someone else must have placed anything found in the truck there.

10. I then explained to HAMANN that with his criminal history, the evidence against him could very likely put him in federal prison for the rest of his life. I also explained to HAMANN that he needed to be honest if he hoped for any leniency from the courts.

11. HAMANN then admitted the backpack found in the cab of the truck belonged to him. He stated there was a small amount of methamphetamine in the bag that belonged to him. He described the methamphetamine as tan in color, and stated it was methamphetamine he had cleaned out of his smoking pipes over the last year. He stated there was also another bag that contained poor quality methamphetamine he had purchased from a male named "David." HAMANN claimed he had purchased a quantity of methamphetamine from "David," and had sifted the poor

quality methamphetamine from that quantity. He intended to return that portion of methamphetamine to "David" for better quality methamphetamine or to get his money back for it.

12. I then asked about the firearm found in the backpack. HAMANN stated the handgun belonged to a female, who he claimed had dropped him off at the salvage yard earlier in the day so he could work on the truck. HAMANN stated he had been holding on to it for her, and she was supposed to have retrieved it from him when she dropped him off, but had obviously failed to do so.

13. I then asked HAMANN about his drug use history, and when he had started selling methamphetamine. HAMANN claimed he started using methamphetamine with his father when he was a teenager, and he had been in trouble with law enforcement several times in the past for drug related crimes. HAMANN stated he had been sentenced to federal prison in 2008 for producing counterfeit money, and had been released in 2014. HAMANN said he had obtained gainful employment after being released from prison, and had been able to stay away from methamphetamine since that time. He said he lost his job in the Fall of 2017 after being unable to adjust to a new shift schedule, causing him to be late enough times that the company fired him. HAMANN said that stress caused him to relapse, and he began selling methamphetamine as a means to support his family.

14. I then asked about the methamphetamine found in the bed of the truck during the search warrant. HAMANN said he had "two" in a box in the truck bed. I asked him what he meant by "two," and he clarified that he meant two pounds. I asked HAMANN if he was referring to the two clear Ziploc-style bags that contained methamphetamine, and HAMANN confirmed he was. I then asked about the remaining methamphetamine, and HAMANN stated he did not know what I was talking about. I explained there were three bundles of methamphetamine wrapped in green cellophane and mustard. HAMANN then stated he didn't know where those bundles came from. I concluded the interview of HAMANN shortly thereafter.

15. On April 18, 2019, I assisted Detective Christopher Wallen of the SPD Property Crimes Unit with the execution of a state search warrant at a residence located at 2544 North Ramsey Avenue, Springfield, Greene County, Missouri.

16. At approximately 3:30 p.m., SPD Property Crimes Detectives and I began approaching the residence to execute the warrant. Just before stepping onto the property, I observed HAMANN exit the residence and approach a vehicle in the driveway. HAMANN was detained by a detective while I approached the front door of the residence. After the residence was secured, and all of the occupants were detained, I contacted HAMANN.

17. I asked HAMANN if he was in possession of any illegal contraband or any other items that could cause me harm, which HAMANN denied. While searching HAMANN's person, I located a baggie in his front left jacket pocket. I observed the baggie to contain a white, crystalline substance consistent with methamphetamine. I later weighed the baggie and found it weighed approximately 37 grams, which field-tested positive for the presence of methamphetamine.

18. When I removed the baggie from HAMANN's pocket, I showed it to him. He spontaneously told me the bag did not belong to him, and he was unaware it was in his pocket. I told him I did not believe his story. HAMANN remained adamant he had borrowed the jacket from a friend, and the suspected methamphetamine must have belonged to the friend.

19. Based upon my training and experience, I believe that the 5 pounds of a mixture or substance containing a detectable amount of methamphetamine seized on December 8, 2018, and the 37 grams of a mixture or substance containing a detectable amount of methamphetamine seized on April 18, 2019, are distributive amounts of that substance.

20. Based upon my training and experience, for the reasons expressed above, I believe that HAMANN has committed the following criminal acts in violation of federal law: (1) possession, with intent to distribute, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A); and (2) possession, with the intent to distribute, a mixture or substance containing a detectable amount of methamphetamine in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

I swear/affirm that the above information is true and correct to the best of my knowledge and belief.

Jason R. Carter
Task Force Officer, DEA

Subscribed and sworn to before me in my presence on the __19th__ day of April, 2019, at __11:03__ a.m./p.m.

Honorable Judge David P. Rush
United States Magistrate Judge
Western District of Missouri